IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:18-CR-184-FL-1

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | |
| ) | |
| JAMES CARNELL BRINSON, JR., ) | MEMORANDUM OPINION |
| ) | |
| Defendant. ) | |
| ) | |

This matter came before the court for trial commencing November 17, 2020. The court memorializes herein reasons denying defendant's oral motions to strike government witness Armando Narvaez Figueroa's ("Narvaez Figueroa") November 18, 2020, testimony and to exclude further testimony by Narvaez Figueroa.

**BACKGROUND**

To provide context for the court's analysis, the court summarizes here the testimony of Narvaez Figueroa and related statements of counsel that precipitated the instant motions. At the second day of trial, on November 18, 2020, the government elicited testimony of Narvaez Figueroa. In the course of that testimony, Narvaez Figueroa stated that an individual referred to as the "first confidential informant," who was unavailable for trial, was disqualified as a confidential informant by the Sampson County Sheriff's Office ("SCSO") because he "broke the rules."[1] Narvaez Figueroa's testimony in this respect was in conflict with earlier testimony by

---

[1] Where a trial transcript has not yet been prepared, the court relies upon the court reporter's rough notes and the court's own notes as an informal record of the testimony that transpired.

SCSO Special Division officer Crystal Gore, who had testified that the first confidential informant was terminated because he had been given less drugs than he paid for by defendant. Defendant raised an objection and requested to be heard outside of the jury. Thereupon, the jury was dismissed, and the court heard the parties outside the presence of the jury.

Defendant initially raised issues regarding <u>Napue v. Illinois</u>, 360 U.S. 264 (1959) and, implicitly, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), stemming from Narvaez Figueroa's testimony that revealed the potential rule-breaking rationale for the first confidential informant's termination, which was previously unknown to defendant or the court. Defendant moved for a mistrial on the basis that the government had a duty to inform him of this information and that information regarding the absent first confidential informant should not have been allowed before the jury. The government offered that this was the first it had heard of this alternative explanation, as well, and that such information had not been concealed from defendant. The court, in order to determine whether the government had access to this information, allowed voir dire examination of Gore outside of the jury's presence.

Upon retaking the stand for voir dire examination, Gore maintained her explanation that the first confidential informant had been let go because he had been "shorted" by defendant and expressed surprise as to Narvaez Figueroa's explanation, but she revealed that a file was maintained by SCSO on the first confidential informant that had never been requested by the government. After this testimony, defendant again raised discovery issues under <u>Brady</u> and <u>Kyles v. Whitley,</u> 514 U.S. 419, 437 (1995) (explaining that the prosecutor has "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"), and the court then called Narvaez Figueroa back to the stand to give voir dire testimony outside the presence of the jury.

2

As pertinent to the instant motions, Narvaez Figueroa then testified that Gore and another SCSO officer had told him that the previous confidential informant was let go because he had broken the rules. Upon Narvaez Figueroa's insistence, even when questioned by the government, that the first confidential informant had been let go because he had broken the rules and was not trustworthy or loyal, counsel for the government began to question whether he had been contacted by defendant or by others on behalf of the defendant. When Narvaez Figueroa answered that he had not been contacted by or spoken with any such individuals, counsel for the government informed the court that he "did not believe that the witness was being honest" because the government knew such individuals had spoken with Narvaez Figueroa. As to Narvaez Figueroa's testimony on the first confidential informant's termination, counsel for the government stated that he had witnesses who contradicted that testimony and that contradicted that Narvaez Figueroa had informed the government of this information prior to trial. Counsel for the government concluded by offering that as an officer of the court, he could tell the court that "what was stated just now is absolutely not true."

After having an opportunity to review the disputed file overnight, defendant asserted the next day, outside of the jury's presence, that the file did in fact contain exculpatory information and that either a mistrial or a continuance was needed for defendant's counsel to review and properly prepare. The court denied the motion for mistrial and granted the motion to continuance. After dismissing the jury until trial was set to resume on November 23, 2020, the court heard further argument during which defendant asserted the instant motion to strike any testimony already given by Narvaez Figueroa and to exclude further testimony by him based on government counsel's comments questioning Narvaez Figueroa's honesty and the veracity of statements Narvaez Figueroa made during the voir dire examination. Defendant argued that such comments

3

meant that Narvaez Figueroa testimony prior to the comments should be struck as violating the principle announced in Napue and that further testimony by Narvaez Figueroa should not be permitted as it too would violate Napue.²

Upon resumption of the trial, on November 23, 2020, the court denied defendant's motion and allowed the government to proceed with testimony of Narvaez Figueroa.

## COURT'S DISCUSSION

The United States Supreme Court held in Napue v. Illinois that, under the Due Process Clause of the Fourteenth Amendment, the government "may not knowingly use false evidence, including false testimony, to obtain a tainted conviction" or "allow[] it to go uncorrected when it appears." 360 U.S. 264, 269 (1959) (explaining also that this rule "does not cease to apply merely because the false testimony goes only to the credibility of the witness"). A conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury," United States v. Agurs, 427 U.S. 97, 103 (1976), meaning that the testimony must have been material.³ See United States v. Chavez, 894 F.3d 593, 601 (4th Cir.).

However, the burden is on the defendant to show that "the testimony was indeed perjured" or false. See United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987); United States v. Bush, 944 F.3d 189, 198 (4th Cir. 2019) ("[A] meritorious Napue claim requires 'a showing of the falsity

---

² Neither party briefed this issue further although invited to do so if they thought helpful.

³ "[The] materiality standard under Napue is essentially identical to the analysis performed under Brady." United States v. Dvorin, 817 F.3d 438, 452 (5th Cir. 2016). The materiality requirement under Brady v. Maryland, 373 U.S. 83 (1963), requires a showing that there is "a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." Wood v. Bartholomew, 516 U.S. 1, 5, (1995) (per curiam). A "reasonable probability" exists when "the likelihood of a different result is great enough to undermine[] confidence in the outcome of the trial." Smith v. Cain, 565 U.S. 73, 75 (2012) (quotation omitted). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434 (1995). Yet, "[t]he mere possibility that an item of undisclosed information . . . might have affected the outcome of the trial, does not establish 'materiality.'" Agurs, 427 U.S. at 109-10.

4

and materiality of testimony.'" (quoting Daniels v. Lee, 316 F.3d 477, 493 (4th Cir. 2003))). Further, the government must have "solicited testimony it knew or should have known to be false or simply allowed such testimony to pass uncorrected." United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994) (emphasis added).

Establishing perjury requires showing that "a witness testifying under oath . . . [gave] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). Further, "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." Griley, 814 F.2d at 971. "Although the [g]overnment may have [] doubts about the accuracy of certain aspects of [evidence], this is quite different from having knowledge of falsity." Bank of Nova Scotia v. United States, 487 U.S. 250, 261 (1988); Hoke v. Netherland, 92 F.3d 1350, 1360 (4th Cir. 1996). "Presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury." United States v. Holladay, 566 F.2d 1018, 1019 (5th Cir. 1978) (citing Napue, 360 U.S. 264) (explaining that "[i]t was for the jury to decide whether or not to credit the witness"). "Neither Napue nor any other decision prohibits a prosecutor from calling witnesses who will present conflicting stories." United States v. Doherty, 867 F.2d 47, 70 (1st Cir. 1989); see also State v. Davis, 992 A.2d 302, 307 (Vt. 2010) ("Impeaching a witness, however, even a party's own witness, is simply not the same as misleading the jury and therefore is not a due process violation under . . . Napue.").

A.  Motion to Strike November 18, 2020, Testimony

As an initial matter, any statements made by Narvaez Figueroa during his voir dire examination outside the jury's presence on November 18, 2020, are not material under the Napue inquiry, see Basden v. Lee, 290 F.3d 602, 614 (4th Cir. 2002) (explaining that false testimony is "material if 'there is any reasonable likelihood that [it] could have affected the judgment of the

5

jury'" (emphasis added) (quoting Agurs, 427 U.S. at 103)); nor does defendant argue such, although defendant does argue it is relevant to the matter of Narvaez Figueroa's continued testimony, as discussed below.

As to the testimony given by Narvaez Figueroa on November, 18, 2020, in the presence of the jury, defendant has not argued that the government knowingly used false testimony, so the only Napue duty implicated would have been counsel for the government's duty to not allow false testimony to go uncorrected. Even presuming that the prosecutor's duty under Napue was triggered, defendant has failed to show that any principle of Napue was violated.

First, it is not readily apparent that Narvaez Figueroa gave "false" testimony as envisioned by Napue and its progeny.  That Narvaez Figueroa's explanation of why a prior confidential informant was no longer used as part of the investigation into defendant conflicted with another government witness's explanation does not in and of itself establish the requisite falsity to trigger the prosecutor's duty of correction.  See, e.g., United States v. Bortnovsky, 879 F.2d 30, 33 (2d Cir. 1989) ("[D]iffering testimony of two government witnesses presented at most a credibility question for the jury." (construing United States v. Miranne, 688 F.2d 980, 989 (5th Cir. 1982))). The type of falsity that Napue and later decisions guard against is perjured testimony rather than conflicting testimony that is the "result of confusion, mistake, or faulty memory." Cf. Dunnigan, 507 U.S. at 94.  The court's standard jury instruction on credibility even contemplates the common factual scenario of "two honest people" perceiving the same event differently. See, e.g., Jury Instructions, United States v. Miller, No. 4:18-CR-54-FL-1 (E.D.N.C. Aug. 20, 2020), ECF No. 104 ("Inconsistencies and contradiction . . . between the testimony of one witness and another, do not necessarily mean that a witness is lying.").

Even if the court were to presume that Narvaez Figueroa's testimony was false and that the prosecutor knowingly failed to correct it, Narvaez Figueroa's purported false testimony would not be material. In fact, the only reasonable likelihood of the alleged false testimony's impact on the judgment of the jury would be exculpatory rather than inculpatory as the conflict between the government's witnesses' explanations could lead to reasonable inferences by the jury regarding one or both's credibility; an inference that defendant could, and subsequently did, draw out during cross examination of Narvaez Figueroa and during direct examination of Gore during defendant's case-in-chief.

In sum, Narvaez Figueroa's testimony on November 18, 2020, and the prosecutor's conduct during such do not amount to Napue violations, and, accordingly, Narvaez Figueroa's November 18, 2020, testimony was not struck from the jury's consideration.

B.  Motion to Exclude Further Testimony

As to whether continued testimony by Narvaez Figueroa, upon the trial's resumption on November 24, 2020, would effect a due process violation under Napue, while inappropriate and likely unwarranted, the prosecutor's sudden declaration outside of the jury's presence that its witness was making statements that were "absolutely untrue"[4] does not mean that the witness would perjure himself in future testimony or that the government would fail its duty to correct false testimony should it arise. Defendant overstates Napue's holding in arguing that a prosecutor has a duty not to present a witness that he or she knows is not truthful generally and that there is an issue with presenting such a witness as credible to the jury after the government's declaration.

---

4  It is unclear whether the government's declaration that Narvaez Figueroa was making statements that were "absolutely untrue" was a reference to Narvaez Figueroa's testimony regarding the confidential informant who preceded him or a reference to Narvaez Figueroa's voir dire answers regarding potential communication or contact with defendant or by others on behalf of defendant.

7

The United States Court of Appeals for the Seventh Circuit has considered and rejected a similar argument in United States v. Adebayo, 985 F.2d 1333 (7th Cir. 1993).  In that case, the defendant argued that, although the government's witness did not give false testimony during the government's case-in-chief, "because [the government's witness] lied . . . at his own trial, the [g]overnment should have known that he was likely to lie about other matters and thus should not have called upon him to testify against [the defendant]." Id. at 1341.  The appellate court rejected this argument, referencing the district judge's allowance of broad cross examination of the government's witness and the judge's instruction to the jury just prior to the government witness's direct testimony that the government's witness had been found guilty of crimes arising out of the same occurrence as the defendant and that they should give the witness's testimony such weight as they felt it deserved, "keeping in mind that it must be considered with caution and great care." Id. "Despite the district court's cautionary words and a searching cross examination, the jury which is the only entity entitled to make such credibility determinations, apparently decided to believe [the government witness's] testimony" and convicted defendant, a decision which the jury was free to reach without offending defendant's due process rights. Id. (quotation omitted).

Here, for similar reasons, defendant's argument that Narvaez Figueroa's untrustworthy nature, as declared by the government, necessitates he be excluded from testifying further under Napue must be rejected.  The credibility of the government's witnesses is a matter for the jury to weigh and decide and if conflicting testimony is given by the government's witnesses, that too can and should be weighed by the jury.  While, "it remains for the [district] court, in the exercise of its judgment and discretion, to ensure that unconstitutional evidence otherwise admissible under applicable evidentiary rules is excluded from trial," United States v. Fulks, 454 F.3d 410, 438 (4th Cir. 2006) (alteration in original) (quotation omitted), "[t]he jury is the finder of fact in a trial and

8

properly judges all credibility issues. Permitting them to weigh testimony of questionable veracity does not violate a defendant's due process rights," United States v. Bonsu, 291 F. App'x 505, 510 n.2 (4th Cir. 2008).

Defendant's remedy for inconsistent testimony by government witnesses, even testimony by a witness the government has contested the truthfulness of, is cross examination and impeachment of that witness, not outright exclusion of that witness's testimony. Inconsistencies are distinguishable from perjured falsities, Bush, 944 F.3d at 198, a fact that the government appeared to forget in making its declaration. It is the government's continuing duty under Napue to correct false testimony and defendant's ability to cross examine that protect against the government's use of a witness it knows or believes to be untruthful.

## CONCLUSION

Based on the foregoing, defendant's motions to strike testimony and to exclude further testimony are DENIED.

SO ORDERED, this the 25th day of November, 2020.

_/s/ Louise W. Flanagan_
LOUISE W. FLANAGAN
United States District Judge